**UNITED STATES of America,**
**Plaintiff,**

v.

**Jacinta A. THOMAS, Defendant.**

**Criminal No. 02–294 (JAG).**

United States District Court,
D. Puerto Rico.

April 9, 2003.

---

Julio E. Gil–De–La–Madrid, Bayamon, PR, Joseph C. Laws, Federal Public Defender's Office, Hato Rey, PR, for Defendant.

Sonia I. Torres–Pabon, Jenifer Yois Hernandez–Vega, United States Attorney's Office, Hato Rey, PR, for Plaintiff.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On September 20, 2002, defendant Jacinta A. Thomas ("Thomas") moved to suppress the evidence obtained from a search of her vehicle by United States Customs Service ("USCS") agents (Docket No. 23). The United States (the "Government") duly opposed the motion (Docket No. 27). On November 4, 2002, the Court referred the motion to Magistrate–Judge Justo Arenas for a report and recommendation (Docket No. 29). On December 20, 2002, Magistrate–Judge Arenas recommended that the Court deny Thomas' motion because the search was a routine border search that did not require any *a priori* suspicion. Alternatively, the Magistrate–Judge held the search was a non-routine search, and was properly supported by reasonable suspicion (Docket No. 36). On December 30, 2002, Thomas timely filed objections to the report and recommendation (Docket No. 37). For the reasons discussed below, the Court **ADOPTS** the report and recommendation and, accordingly, **DENIES** Thomas' motion to suppress.

## FACTUAL BACKGROUND[1]

On July 6, 2002, the USCS received information from a confidential source that a box containing narcotics was traveling from St. Marteen to San Juan, Puerto Rico aboard the cargo vessel "Sky Seal." The source further informed the USCS that an individual by the name of "Small" would be picking up the box in San Juan. On July 9, 2002, before anyone picked up the box in San Juan, USCS agents opened the box and saw that it contained several packages wrapped up in newspaper. The agents suspected that the packages contained cocaine and heroin. The USCS received further information that "Small" would send someone else in his stead to pick up the box. At approximately 7:00 a.m., USCS agents conducted a surveillance operation at the pier 10 area in San Juan. At 8:20 a.m., a white Ford Taurus arrived at the pier 10 area. The driver was later identified as Thomas. Immediately thereafter, Thomas left the premises with a female companion. At approximately 8:45 a.m., Thomas returned to the pier 10 area, where she loitered for approximately three hours, apparently making phone calls from her cellular phone. Subsequently, the agents observed when a cargo vessel employee placed the box they had previously identified as containing narcotics in Thomas' car. At approximately 11:30 a.m., the agents observed Thomas boarding the cargo vessel "Lady Romney," from where she thereafter exited with another female companion. Both women entered the white Ford Taurus and left the pier 10 area.

The agents then stopped Thomas' vehicle and observed the box in plain view on the backseat of the vehicle. The agents identified themselves and informed Thom-

---

**1.** The Court culls the relevant facts from the report and recommendation (Docket No. 36), the USCS's Report of the Investigation (Dock-
et No. 23, Attachment), and the Government's opposition to the motion to suppress (Docket No. 27).

as and her companion that they were performing a border search, to which they did not object. When asked about the contents in the box, Thomas replied that it was hers and that it contained some merchandise she had just received from Anguilla. The agents proceeded to open the box, where they found the newspaper wrapped packages they described as kilo-size packages. The contents of the box field-tested positive for cocaine and heroin. The agents then detained Thomas. She is charged in Count One with aiding and abetting in the importation into the United States, from a place outside thereof, 3960 grams (net weight) of heroin and 4922 grams (net weight) of cocaine base in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2; and in Count Two with possession with intent to distribute these quantities in violation of 21 U.S.C. § 841(a)(1).

## DISCUSSION

### A. Standard for Reviewing a Magistrate–Judge's Report and Recommendation

A District Court may, on its own motion, refer a pending motion to a U.S. Magistrate–Judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed. R.Civ.P. 72(b); Local Rule 503. Pursuant to Fed.R.Civ.P. 72(b) and Local Rule 510.2, the adversely affected party may contest the Magistrate–Judge's report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. See 28 U.S.C. § 636(b)(1). Since defendant has filed timely objections to the Magistrate–Judge's report and recommendation, the Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. See United States v. Raddatz, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980);

Lopez v. Chater, 8 F.Supp.2d 152, 154 (D.P.R.1998).

### B. Thomas' Motion To Suppress

Thomas seeks to suppress the evidence against her claiming that it is the fruit of an illegal search. Her argument seems to be twofold: (1) that the search does not fall within the border search exception to the warrant requirement of the Fourth Amendment because she was neither leaving nor entering the country, and (2) that the agents did not have reasonable suspicion to conduct the warrantless search. Neither argument has merit.

■ It is well-settled that border searches are one of the recognized exceptions to the warrant requirement of the Fourth Amendment. See United States v. Victoria–Peguero, 920 F.2d 77, 80 (1st Cir. 1990). "[T]he Fourth Amendment's balance of reasonableness is quantitatively different at the international border than in the interior. Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant...." United States v. Montoya de Hernandez, 473 U.S. 531, 538, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985); see also United States v. Beras, 183 F.3d 22, 25 (1st Cir.1999). "[S]earches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border...." United States v. Ramsey, 431 U.S. 606, 616, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977).

"Since the founding of our Republic, Congress has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the

introduction of contraband into this country." *Montoya de Hernandez,* 473 U.S. at 531, 105 S.Ct. 3304 (*citing Ramsey,* 431 U.S. at 616–617, 97 S.Ct. 1972). "Border searches ... have been considered to be reasonable by the single fact that the person or item in question had entered into our country from outside." *Ramsey,* 431 U.S. at 619, 97 S.Ct. 1972.

■ Furthermore, "[b]ecause it is not practical to set up checkpoints at the outer perimeter of a country's territorial waters," which is three geographic miles from shore, "courts have consistently recognized the constitutionality of warrantless searches at the functional equivalent of the sea border." *Victoria–Peguero,* 920 F.2d at 80. The functional equivalent of the border is "the first point at which an entrant may practically be detained. For example ..., the airport where an international flight lands, or the port where a ship docks after arriving from a foreign country." *United States v. Cardenas,* 9 F.3d 1139, 1147 (5th Cir.1993). "For the purposes of suspicionless Customs searches, the border is elastic[,][b]ecause people can enter the country at points other than along the actual border...." *United States v. Hill,* 939 F.2d 934, 936 (11th Cir.1991).

■ Thomas argues that the search did not fall under the border search exception to the warrant requirement because she did not cross any border. She is mistaken. The vessel "Sky Seal", which transported the box from St. Marteen to San Juan crossed the border into United States territory and thereby subjected its cargo to search by customs officials. The aforementioned cases clearly establish that USCS agents can search persons as well as items that have crossed the border.

*See Ramsey,* 431 U.S. at 619, 97 S.Ct. 1972. That the search occurred in the pier 10 area does not render it unreasonable, for it serves as the functional equivalent of the border.[2] *See Cardenas,* 9 F.3d at 1147.

■ Thomas further argues that the agents lacked reasonable suspicion to search her vehicle. Reasonable suspicion would be required only if the border search was categorized as a nonroutine customs stop, *see Montoya de Hernandez,* 473 U.S. at 541, 105 S.Ct. 3304, or if the agents were conducting an extended border search, *see United States v. Ogbuehi,* 18 F.3d 807, 812 (9th Cir.1994). Nonroutine customs stops must be supported by reasonable suspicion of smuggling contraband. *See Montoya de Hernandez,* 473 U.S. at 541, 105 S.Ct. 3304. Although there is no specific standard for qualifying a search as nonroutine, the First Circuit has stated that "[t]he degree of invasiveness and intrusiveness associated with any particular type of search determines whether or not the search qualifies as routine." *United States v. Braks,* 842 F.2d 509, 511 (1st Cir.1988). The factors for determining the degree of invasiveness that accompanies any particular search are:

"(i) whether the search results in the exposure of intimate body parts or requires the suspect to disrobe; (ii) whether physical contact between Customs officials and the suspect occurs during the search; (iii) whether force is used to effect the search; (iv) whether the type of search exposes the suspect to pain or danger; (v) the overall manner in which the search is conducted; (vi) whether the suspect's reasonable expectations of

---

**2.** The search could also be upheld under the standard of a controlled delivery. *See e.g., Illinois v. Andreas,* 463 U.S. 765, 769–773,

103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983); *United States v. Singh,* 811 F.2d 758, 761 (2d Cir.1987).

privacy, if any, are abrogated by the search."

*Id.* at 512 (citations omitted). "In light of these several factors the only types of border search of an individual's person that have been consistently held to be non-routine are strip-searches and body-cavity searches." *Id.* at 512–3. Thus, in the context of this case, the search of Thomas' vehicle is hardly intrusive enough to qualify as a nonroutine search.

 Furthermore, "[e]xtended border searches take place 'a greater spacial and temporal distance from the border than the functional equivalent of the border' and therefore require reasonable suspicion." *Ogbuehi,* 18 F.3d at 812 (*citing United States v. Cardona,* 769 F.2d 625, 628 (9th Cir.1985)). Thomas claims that the search qualifies as an extended search because the agents stopped her outside the pier 10 area. In *United States v. Lopez–Martinez,* 25 F.3d 1481 (10th Cir.1994), however, the court upheld a search conducted at a distance of sixty miles from the border where it was reasonable for the agent to suspect that the defendant was en route from the border. *Id.* at 1485. Although Thomas does not specify how far away from the pier 10 area she had gone before the agents stopped her, the difference between the time she exited the "Lady Romney" and the time of the search was only three minutes, as evidenced by the USCS' Report of the Investigation. (*See* Docket No. 23, Attachment). Therefore, if the stop did occur outside of the pier 10 area, it did not occur at a distance sufficient to qualify it as an extended border search. Accordingly, reasonable suspicion was not required.[3]

Therefore, Thomas has failed to persuade the Court to reject or alter the Magistrate–Judge's report and recommendation.

### CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Magistrate–Judge's report and recommendation and, accordingly, **DENIES** Thomas' motion to suppress.

IT IS SO ORDERED.

---

3. Even if reasonable suspicion was required in this case, the Court finds that the agents had sufficient evidence to satisfy their burden.